### AMERICAN NAT. RED CROSS
#### v. JAMESON.
#### No. 10115.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 7, 1949.

Decided Nov. 7, 1949.

Mr. Murray Preston, Washington, D.C., with whom Messrs. John Spalding Flannery and Caesar L. Aiello, Washington, D. C., were on the brief, for appellant.

Mr. Robert S. Leonard, Washington, D. C., for appellee.

Before WILBUR K. MILLER, PRETTYMAN and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

On April 5, 1948, the United States District Court for the District of Columbia awarded judgment for $4,774.20 to Rose Perel Jameson against her husband, R. D. Jameson. At her instance, writs of attachment were issued against Jameson's "goods, chattels and credits", and were served on his employer, the American National Red Cross, on Thursday, April 29, and Thursday, May 13. Each of those writs was successful in reaching Jameson's semimonthly salary.

A third writ was issued on Thursday, May 27, but was not served on the garnishee until 10:15 a. m. on Friday, May 28. As Jameson's check had already been delivered to him earlier that morning, the Red Cross answered that it was not indebted to him at the time the process was served. Nevertheless, Mrs. Jameson moved for judgment against the garnishee for $197.05, claiming that sum had been paid before it was due in violation of Title 16, § 312(b),[1] District of Columbia Code (1940), which makes it unlawful for an employer to pay an employee in advance for the purpose of avoiding an attachment, and declares any such advance payment void as to the attaching creditor.

After hearing evidence, the trial judge said, "* * * as a result of the service of the prior attachments, on April 29 and May 13, * * * the two previous pay days",[2] the Red Cross was on notice "* * * that the salary of R. D. Jameson was under constant attack * * *." The judge added that the Red Cross, "* * * because of its constructive notice of the forthcoming garnishments, since there had been garnishments of the two previous salaries, was obliged to exercise a reasonable amount of diligence, for its own protection at least, which was not done in this case."

The District Court then held the payment early in the morning of May 28 was made in advance of its due date, in violation of the Code provision, and entered judgment against the garnishee. The American National Red Cross appeals.

1. The Code provision is as follows: "(b) It shall be unlawful for any employer to pay salary or wages to an employee in advance of the time the same shall be due and payable, for the purpose of avoiding or preventing an attachment or garnishment against the earnings or salary of such employee, and such advance payment, as to the attaching creditor, shall be void: Provided, That after the service of one writ of attachment or garnishment on a judgment against an employer, any payment of salary or earnings thereafter before the time when said salary or earnings are due and payable, made within a period of six months after the date of service of said writ or before the earlier satisfaction of such judgment, whichever is the earlier, shall as to such attaching creditor be presumed to be in violation of this subsection and shall cast upon the said employer the burden of proving that such advance payment or payments were not for the purpose of avoiding the attachment of such salary or earnings. (As amended Dec. 20, 1944, 58 Stat. 819, ch. 610, § 4.)"

2. This statement was erroneous, as each of those days was Thursday, and not a pay day, as will appear later in this opinion.

We must first determine whether the payment to Jameson on May 28 was in advance of the due date; for if it was not, § 312(b) has no application and the fact that there had been prior attachments cast no duty on the garnishee to justify the payment of May 28. Only an advance payment, after previous garnishment, places on the employer the burden of proving that it was not for the purpose of avoiding attachment.

C. Wade Downing, assistant treasurer of the Red Cross, and Mrs. Hannah S. Ketcham, administrative assistant to the director of its Historical Division, where Jameson worked, were the only witnesses. Their testimony was undisputed, and its truth was stipulated by Mrs. Jameson's counsel.

Mr. Downing testified that, according to established and well understood procedure, the employees of the Red Cross in the District of Columbia, more than twelve hundred in number, are paid on the 15th day of each month and on the last working day of each month. If either the 15th or the last day of the month falls on Saturday or Sunday, salaries are paid on the previous Friday. On each pay day the salary checks are sent to the several Red Cross buildings as soon as possible after the treasurer's office opens at 8:15 a. m., and are then immediately distributed to the employees.[3] Pursuant to this practice, the witness, Mrs. Ketcham, received the Historical Division salary checks early in the morning of Friday, May 28, arranged them in the order in which the employees' desks were placed, and then distributed them in that order. As Jameson's desk was in the far corner of the room, he was always the last to receive a check. Mrs. Ketcham handed him his check that morning between 9:30 and 9:45.[4]

3. "Q. What is the customary date for pay days to be held? A. We pay on the last working day of the month, and also the period ending the 15th. In other words, if it is a Saturday or Sunday that the 15th or the last day of the month falls on, it is moved up to the last working day for those periods. We pay twice a month.

"Q. Is that generally understood to be the pay day by the employees of the Red Cross, if your knowledge goes that far? A. Very much so.

"Q. They know when pay day is coming? A. Oh yes.

"Q. At what time of day does the Treasurer's office endeavor to get the pay checks distributed on pay day? A. We attempt to have the pay roll finished for distribution the day prior, so that on pay day morning they are distributed; and as we have now several buildings, they leave our office as soon as possible after the opening of the office, which is 8:15.

\* \* \* \* \* \* \*

"Q. Was there a regular pay day held for the D. C. employees of the Red Cross on May 28? A. There was.

"Q. And will you tell the Court how the date May 28 was calculated as a general pay day? A. Well, I think that is established by the calendar. May 31 was a Monday, which was observed as a holiday for Memorial Day, which fell on Sunday. Saturday not being a working day—the 29th—we paid on Friday the 28th."

4. "Q. As administrative assistant to Dr. Heckman, Director of the Historical Division, is it among the regular course of your duties to make distribution of pay checks to the people in your office on pay days? A. That is right; yes, sir.

"Q. Do you have blanket instructions from Dr. Heckman to that effect? A. I do.

"Q. Was the regular pay day held on May 28? A. That is right.

"Q. For all the employees in your office? A. Yes, sir.

"Q. On that date was a man by the name of R. D. Jameson working in your office? A. He was.

"Q. Was he paid on that day? A. He was.

"Q. To the best of your recollection, Mrs. Ketcham, at what time of day was the distribution of the pay checks in your office completed? A. I would say between 9:30 and 9:45.

"Q. Was that a normal time for the distribution of pay checks on regular pay days? A. Yes, sir.

"Q. In what order were the checks arranged when they came into your hands for distribution? A. Alphabetical order.

"Q. And did you rearrange them? A. I rearranged them according to where people sat in the room.

"Q. Where was Mr. Jameson's desk? A. In the farthest corner.

"Q. As a result of that, was he the last man in your office to be paid? A. He was always the last one to get his check."

With the established, customary procedure of delivering the salary checks early in the morning of each pay day thus clearly shown, it follows that the Red Cross did not pay in advance by delivering the check to Jameson so early in the day and before 10:15 a. m. when the writ was served. It remains to determine whether Friday, May 28, was in fact the pay day; whether Jameson's salary was due and payable that day. If it was, the salary was not paid in advance, and the appellee fails.

On January 8, 1948, the executive vice president of the appellant issued a bulletin which went to all employees and which included the following: "During the year 1948, Washington's Birthday, Memorial Day, and the Fourth of July, three of the official holidays observed by the organization occur on Sunday. In accordance with the practice of the organization, the Monday following each such Sunday will be granted as a holiday to the staff."

Under this regulation, Monday, May 31, 1948, was a holiday. Since May 30 was Sunday and May 29 was Saturday, neither was a working day for the Red Cross employees. Consequently, Friday, May 28, was the last day in the month for work, and was the established, recognized pay day, according to the concededly truthful testimony of Mr. Downing.

Apparently Mrs. Jameson was familiar with the Red Cross practice of paying salaries on the 15th and on the last day of the month, unless those days fell on Saturday or Sunday in which event payment was made on the previous Friday. For we observe that her two earlier and successful writs were issued *and served* on Thursday, April 29, and Thursday, May 13. That was because Friday, April 30, was the last working day in that month, and because Friday, May 14, was a regular pay day since May 15 was Saturday. The trial judge erred in referring to April 29 and May 13 as "the two previous pay days", as each was the day before a pay day.

Just as she had done on the two previous occasions, Mrs. Jameson had the third writ issued on Thursday, May 27,—obviously because she knew Friday, May 28, the last working day of the month, would be the regular pay day. She was unfortunate in that her third writ was not served on Thursday, the day of its issuance, as the first two had been.

We are quite clear that the Red Cross did not pay Jameson in advance on May 28, and that the Code provision therefore does not apply. The District Court erred in rendering judgment against the garnishee.

Reversed.